## SUPERIOR HAY STACKER MFG. CO. v. DAIN MFG. CO. OF IOWA.

(Circuit Court of Appeals, Eighth Circuit. September 1, 1913.)

No. 3,828.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—HAY STACKER.
    The Dain patent, No. 608,653, for a hay stacker, claims 1, 2, 4, and 12, construed, and *held* not anticipated and to disclose patentable invention; also *held* infringed by the structure of the Vroom patent, No. 819,187.

2. PATENTS (§ 167*)—CONSTRUCTION—USE OF WORDS "SUBSTANTIALLY AS DESCRIBED."
    That claims of a patent use the words "substantially as described" does not necessarily limit the patentee to the exact construction shown in the drawings and specification.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*
    For other definitions, see Words and Phrases, vol. 7, p. 6741.]

3. PATENTS (§ 324*)—SUIT FOR INFRINGEMENT—COSTS.
    Where the decree in an infringement suit, which incidentally awards costs to the complainant, is affirmed on the merits, it will not be reversed on the question of costs.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 600–606; Dec. Dig. § 324.*]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by the Dain Manufacturing Company of Iowa against the Superior Hay Stacker Manufacturing Company. Decree for complainant, and defendant appeals. Affirmed.

W. H. C. Clarke, of Washington, D. C., for appellant.

John L. Jackson, of Chicago, Ill. (A. H. Adams, of Chicago, Ill., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and WILLARD, District Judge.

WILLARD, District Judge. [1] The Dain Manufacturing Company, appellee here, brought this suit in the court below to enjoin the appellant, the Superior Hay Stacker Manufacturing Company, from infringing certain claims of patent No. 608,653, issued on August 9, 1898, to the plaintiff for an improvement in hay stackers; the inventor, Joseph Dain, Jr., having assigned his rights in the patent to the plaintiff. The case was referred to a special master to hear the evidence and report his findings and conclusions thereon to the court.

The master found in favor of the plaintiff, this finding was confirmed by the court below, and a final decree entered for an injunction and an accounting.

The device of the defendant found to be an infringement is constructed in conformity with the patent issued to Vroom on May 1, 1906, No. 819,187.

A side elevation of the plaintiff's stacker is shown in figure 1. Figure 2 is a top or plan view.

Fig. 2.

The defendant's stacker is shown on this plan.

*Fig. 1*

In the specification of the plaintiff's patent the following passages are found:

"My invention relates to hay stackers, and particularly to that class in which the hay is placed upon a pivoted carrier, which is then raised to an upright position by means of an elevating frame.

"As heretofore constructed a great deal of power has been required to raise the carrier frame during the first part of the operation of raising it from its horizontal position, owing to the fact that in implements of this class horse power is generally used, and the system of levers used to change the direction of the pull has resulted in a loss of power through the decrease of leverage.

"My invention has for its object to provide a stacker in which the power required will be more nearly uniform throughout the entire operation of raising the stacker from a horizontal to a vertical position and in which less power will be required. ✻ ✻ ✻

"By this means when the carrier frame is in a horizontal position almost a direct vertical pull is secured, which greatly diminishes the power required to lift the frame. ✻ ✻ ✻

"By the peculiar arrangement of the lifting bars the direction in which the force is transmitted from the lifting rope *40* to the carrier frame is so regulated that during the first part of the lifting operation the power will be exerted almost at right angles to the carrier frame, and at the same time the power will be exerted upon the pulley *37* at about an angle of forty-five degrees, and it will therefore be very effective for lifting purposes. ✻ ✻ ✻

"The most important feature of my invention consists of the use of two pivoted lifting levers arranged, as described, with their ends connected, whereby the power applied will be transmitted and applied to the carrier frame at an angle most favorable to secure the best results, at the same time providing for the application of such power to such lifting bars at a greater angle than has heretofore been possible in any construction known to me."

The claims here in question are 1, 2, 4, and 12, and they are as follows:

"1. The combination with supporting devices, a carrying frame, and pivoted supports therefor, of pivoted lifting levers connected to each other at their

upper ends, one of said levers being connected to the carrying frame, and mechanism for operating said levers to lift the carrying frame, substantially as described.

"2. The combination with supporting devices, a carrying frame, and pivoted supports therefor, of lifting levers arranged at an angle to each other, the upper ends of said levers being connected, the upper end of one of said levers being connected to the carrying frame, and mechanism for operating said lifting levers, substantially as described."

"4. The combination with supporting devices, a carrying frame, and pivoted supports therefor, of a pivoted lifting lever *33 34*, the upper end of which is connected to said carrying frame, lifting lever *35 36* pivoted at its lower end forward of the pivot of said lever *33 34*, devices connecting the upper ends of said levers, and rope and pulley mechanism for operating said levers to lift the carrying frame, substantially as described."

"12. The combination with a runner frame, and an extensible and pivotally supported carrier frame, of lifting levers pivotally supported by the runner frame and connected together at their upper ends, devices connecting the upper end of one of said lifting levers to the carrier frame, and rope and pulley mechanism for operating said lifting levers to raise the carrier frame in the arc of a circle, substantially as described."

Although the defendant says in its brief that "the crux of the whole case is in the different derrick mechanisms used by complainant and defendant," yet it attacks the validity of the plaintiff's patent. Therefore it will be necessary to consider that question first.

On October 6, 1885, patent No. 327,852 was issued to Allen for an improvement in hay rickers and loaders. Prior to this time hay stackers had generally been constructed with a stationary upright frame. He was the first to introduce a hinged or pivoted lifting frame or lever, and to do away with the stationary upright frame. Hay stackers of various forms were presented after this date up to the time when the patent in suit was issued to Dain, who was the first to introduce two pivoted lifting frames or levers. That this was something new appears from the testimony of the defendant's expert. He said:

"In the Dain patent in suit the added element for the purpose of lifting the lifting frame *33 34* is a second lifting frame."

After referring to the various patents prior to Dain's, he said:

"None of them have the precise lifting means called for by this claim" (1).

At another place he said:

"Dain having done nothing more than to add to the Allen construction an additional hoisting frame."

That he considered this addition to be an improvement appears also from his testimony. He said:

"That is to say, the Allen stacker would stack hay, and would stack it in the same way that the Dain stacker stacks hay. There is only an improvement in the Dain invention in the manner of applying the power so as to get a more effective application of the power, but the thing done is the same:"

He also said:

"It seems to me that in view of the Allen patent the invention in the Dain patent comes down to a very small feature."

After making these statements, he sums up his examination of the prior patents, as follows:

"As regards the subject-matter of claims 1, 2, 4, and 12, I would say that I do not find any single patent in the prior art which has in it all of the

elements specified in these claims, except that as regards claims 1 and 2, the construction called for is found within the terms of these claims in the Boland patent, No. 366,617. I do find that everything called for by these claims 1, 2, 4, and 12 is found in the Blake patent, No. 433,067, as well as a number of others, with the exception of the particular lifting means, and this lifting means is clearly and fully disclosed in the British patents to McLaughlin & Maling."

He considered that the nearest American patents to the construction of claims 1, 2, 4, and 12 were those of Boland, No. 366,617, July 12, 1887, and Blake, No. 433,067, July 29, 1890, and of these he regarded the Blake construction as the closer. It is to be noticed in passing that, while he considers the Dain stacker as a mere improvement upon the Allen stacker, he does not consider the Allen patent the closest approximation. to that of Dain. When he refers to the Blake patent as a close approximation to that of Dain, he is evidently referring to claims 6, 7, and 8 of the Dain patent, as appears from other parts of his testimony. The patent to Blake shows a high stationary frame, and only one swinging derrick or lifting frame. Of the patent to Boland defendant's expert says that "the same result is secured that is aimed at in the Dain patent" but he adds:

"The construction shown in the Boland patent is not the same as that shown and described in the Dain patent in suit."

As to this patent it is sufficient to say that we agree, as did the master, with the plaintiff's expert, when he said:

"Certainly to produce the stacker of the Dain patent in suit from the Boland device you would have to throw away about half of the elements of the Boland patent and radically rearrange and redesign the remaining elements, and such rearrangement and redesignment of the Boland structure would, in my opinion, call for a great deal of patentable invention."

We also agree with what the same expert further said with reference to this patent:

"It shows a combination of elements, some of which elements might have the same names applied to them as are applied to the elements of the Dain combination; but the combination in which these elements are employed in the Boland patent is radically different from the combination in which these elements are employed in the Dain patent. Inasmuch as the two combinations are so radically different, the fact that the same names might be given to some of the elements per se of the combination makes no difference whatever as regards novelty of the Dain claims in view of the prior Boland patent."

Defendant claims, however, that although no one of the American patents shows the same lifting means as appear in the Dain patent, yet they are shown in the British patent to McLaughlin & Maling, No. 9,371, July 1, 1887. The defendant's expert considers this "a very close reference and rather better than anything that has been cited in the answer in this suit." It, however, was not discovered by any one until after the taking of the testimony in this action had commenced. The apparatus described in this patent is designed for raising heavy weights from the holds of ships or from mines. There is nothing in the specification to indicate that it can be used as a hay stacker. There are only two movements during its operation. The first is entirely vertical, the second is almost entirely horizontal, and

the second movement does not commence until the first ends. An examination of the drawings of this patent, which are here shown, makes it plain that no mechanic merely skilled in the art, with this patent as a guide, would have ever constructed the Dain hay stacker.

*Fig. 3*

It is to be observed that in this British patent the rope to which the power is applied is not attached to the mast *4*, as in the Dain patent it is attached to *35 36*, which the mast *4* is said to represent. Nor is it attached to the boom *21*, which is said to correspond with *33 34* in the Dain patent. It passes down to the weight itself, and when the power is applied neither the mast *4* nor the boom *21* moves as do *35 36* and *33 34* in the Dain patent. They do not move until the weight has finished its vertical movement, and then the mast is forced against the stationary standard. It is also to be observed that Dain has no such construction as the element *18*, in which the lower end of the boom *21* slides.

That the addition of the second lifting frame in the Dain patent was invention sufficiently appears. It is not true, as the defendant claims, that the second lifting frame was merely adding a second bend to the rope which Allen had bent once. It accomplished something more than a mere change in the line of force. The plaintiff correctly says in its brief:

"Obviously, if bends were all that was wanted, as many bends as might be desired could be secured by providing a corresponding number of arms rigidly

connected together and arranged to rotate about the same pivot like the spokes of a wheel, producing in effect a pulley or wheel on a large scale.  *  *  *

"In the Dain construction there are two levers, pivoted at separate points, and connected together at or near their upper ends in such manner that *their relation to each other constantly changes as hoisting progresses.* The power is first applied to that one of said levers which initially stands in a more nearly upright position, so that the power is applied thereto at a more favorable angle. At the same time the connection between the second lever and the carrying frame forms a favorable angle for applying lifting power to said frame. The movement of the two levers in hoisting changes their angular relation to each other, and to the line of pull, so that the favorable angle is maintained throughout the hoisting operation, with the result, as stated in the specification of the patent in suit, that the power required is more nearly uniform throughout the entire operation of raising the load, and at the same time, owing to the fact that the power is applied to the lifting lever at a greater angle than was theretofore practicable, the machine may be operated with less power."

Allen introduced the first movable lifting frame in 1885. After him came Locher, No. 349,804, September 28, 1886; Boland, No. 366,617, July 12, 1887; Smith, No. 424,030, March 25, 1890; Blake, No. 433,067, July 29, 1890; Ham, No. 451,045, April 28, 1891; Smith, No. 464,190, December 1, 1891; Bernard's first patent, No. 478,979, July 19, 1892; Bernard's second patent, No. 482,611, September 13, 1892; Blume, No. 486,751, November 22, 1892; and Allen, No. 497,160, May 9, 1893.

All these men were inventors, and were undoubtedly skilled in the art of designing and constructing hay stackers. The fact that no one of them, having before him the first Allen patent, thought of using two swinging lifting frames, is persuasive and satisfactory evidence that that would not occur to one skilled in the art.

The defendant assigns as error the fact that the master in his decision relied on the testimony of Duffield, after he had held that his evidence was incompetent. This testimony related to the commercial value and utility of the plaintiff's machine. To show that utility, it is not necessary to and we do not consider any of Duffield's testimony. The granting of the patent is prima facie evidence of such utility. This prima facie evidence is strengthened by the fact that the defendant itself has appropriated the device, and the further fact that one King also appropriated it, and in a suit brought by this plaintiff has been enjoined from using his infringing structure. We conclude therefore that claims 1, 2, 4, and 12 are valid.

The next question is: Are they infringed by the defendant's machine? There are two differences in the construction of the two hay stackers. Instead of using two bars *35* and *36* as his lifting frame, Vroom uses a single bar *L*. It is admitted, however, by the defendant that this is an immaterial difference.

The other difference is that the two lifting levers are not, as the defendant claims, connected at their upper ends. All the claims in suit indicate that the two lifting frames in the plaintiff's machine are connected at their upper ends.

As is seen by reference to the diagram in the Vroom patent, the roller *15* slides on the bar *L* as the rope is pulled and the hay fork raised. It reaches the top of the bar as the fork continues its ascent and remains there for a very considerable portion of the time in which the stacker is being operated, according to the plaintiff's expert, during the last one-third of the time.

The claim of the defendant is that the plaintiff is limited to the precise construction shown in the patent, and that any device which does not show the lifting frames connected at that part of their upper portions at which they appear to be connected in the diagrams accompanying the plaintiff's patent is not an infringement. This claim cannot be sustained.

There was no action taken in the Patent Office which limited Dain to a connection at the mathematical extremities of the two frames.

Moreover, such a connection was not essential to the operation of his stacker.

What did he then mean when he said that the frames were connected at their upper ends? If the upper end means the top of the frame and nothing less, then rod *41* should have been in some way fastened to the tops of the extremities of the frames, so as to leave every part of the frame below it. That so impracticable a construction was never contemplated is indicated by the drawings which show rod *41* between the two bars and *near* the top.

If Vroom, with the same length of Dain's inclined frame *33 34*, had made his lever *L* half an inch longer than Dain's vertical frame *35 36*, and then attached the rod *41* half an inch below the top of the lever *L*, his construction would, without any doubt at all, have been considered a palpable evasion of Dain's patent. It is clear that the words "connected at their upper ends" do not mean at their mathematical extremities. If the attachment is so near the end that the machine gets all the benefit of Dain's invention, infringement is made out. That the defendant's structure does secure all the advantages of Dain's invention is made plain by the evidence.

[2] The fact that the claims in suit use the words "substantially as described" does not, under the circumstances of this case, limit the plaintiff to the exact construction shown in the diagrams and specification. United States v. Society, etc., 224 U. S. 309, 328, 32 Sup. Ct. 479, 56 L. Ed. 778; O. H. Jewell Filter Co. v. Jackson, 140 Fed. 340, 72 C. C. A. 304 (8th Cir.).

It is said by the defendant that Dain improved upon Allen's device, and that Vroom improved upon Allen's device. The fact is, however, that Vroom, knowing of Dain's device, as was admitted on the trial, improved not upon Allen's structure, but upon Dain's. That this improvement upon Dain's machine was itself patentable constitutes no defense to the charge of infringement of Dain's patent.

Plaintiff introduced evidence relating to claims 6, 7, and 8, but prior to the argument before the master withdrew these claims. Neither the master nor the court below passed upon them, and the defendant does not now ask this court to do so; but he says that they are broad

claims, that claims 1, 2, 4, and 12 are narrow ones, and therefore must be strictly limited. Claims 6, 7, and 8 are not, however, broad claims. They all include the element of an extensible carrier which element is not found in claims 1, 2, and 4.

[3] The defendant assigns as error the allowance by the court below of full costs to the plaintiff. He bases this assignment upon the contention that claims 6, 7, and 8 were eliminated, and that in view of the provisions of Revised Statutes, § 4922 (U. S. Comp. St. 1901, p. 3396), relating to disclaimers, the plaintiff is not entitled to costs. That section, however, has no application to this case, because there has been no adjudication with regard to claims 6, 7, and 8, and it does not yet appear that Dain was not the inventor of the devices described in those claims. The court below having allowed costs, this court upon affirming the decree on its merits, will not reverse it on the question of costs. Du Bois v. Kirk, 158 U. S. 58, 67, 15 Sup. Ct. 729, 39 L. Ed. 895.

The decree of the court below is affirmed.